FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 17, 2020

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| JOSHUA M., | ) No. 1:19-CV-05135-LRS |
| Plaintiff, | ) **ORDER GRANTING** |
| | ) **DEFENDANT'S MOTION FOR** |
| vs. | ) **SUMMARY JUDGMENT,** |
| | ) *INTER ALIA* |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 18).

## JURISDICTION

Joshua M., Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) and Title XVI Supplemental Security Income benefits (SSI) on August 28, 2014. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on December 27, 2017, before Administrative Law Judge (ALJ) Stewart Stallings. Plaintiff testified at the hearing, as did Vocational Expert (VE) Sonia Stratton. On May 15, 2018, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a 10th grade education and past relevant work experience as a painter helper. He alleges disability since December 1, 2007, on which date he was 29 years old. Plaintiff's date last insured for Title II SSDI benefits was June 30, 2012.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) improperly rejecting medical opinions from Plaintiff's treating medical providers; 2) failing to find at Step Three that Plaintiff's mental impairments met one or more of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) failing to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding his symptoms and limitations; and 4) failing to conduct an adequate analysis at Step Five resulting in his finding that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) and § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 3**

determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I) and 416.920(a)(4)(I). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medically determinable impairments including: left shoulder joint impairment of indeterminate age; degenerative disc disease of the lumbar and cervical spine; depression; anxiety; a personality disorder; a history of attention-deficit hyperactivity disorder (ADHD); and a history of substance abuse/dependence disorders;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the Residual Functional Capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[1], except he requires the option to change from a sitting position to a standing position, or vice versa, every 30 minutes for five minutes if necessary while remaining at the work station; he can never climb ladders, ropes, and scaffolds, and can occasionally (one-third of the workday) stoop, crouch, kneel, crawl, and climb ramps and stairs; he is limited to occasional overhead reaching with the left upper extremity; he needs to avoid all exposure to hazards such as unprotected heights and moving or dangerous machinery; he is limited to simple routine and/or repetitive tasks (work that requires minimal

---

[1] "Light" work is defined as involving lifting no more than 20 pounds, with frequent lifting and carrying of objects weighing up to 10 pounds. It may require a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm or leg controls.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

math, reading, and writing skills) with no more than brief superficial interaction with the public and co-workers, including no team or tandem tasks, and only occasional interaction with supervisors;

4) Plaintiff's RFC precludes him from performing his past relevant work as a painter helper; and

5) Plaintiff's RFC, however, allows him to perform other jobs existing in significant numbers in the national economy, including assembler small product and nut and bolt assembler.

Accordingly, the ALJ concluded Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a); 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d); 416.913(d). In order to discount the opinion of a non-acceptable medical source, the ALJ must offer germane reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).[2]

### A. Physical Impairments

Over the years, Plaintiff has been seen by several different nurse practitioners at Tri-Cities Community Health. Each of those nurse practitioners at various times completed a State of Washington Department of Social and Health Services (DSHS) "Physical Functional Evaluation" form regarding the Plaintiff.

In April 2010, Advanced Registered Nurse Practitioner (ARNP) Debra Bariletti indicated Plaintiff's shoulder impairment was "moderate" in that it significantly interfered with his ability to perform one or more basic work-related activities. She opined that Plaintiff remained capable of "light" work. (AR at p. 365).

In August 2013, ARNP Bariletti indicated Plaintiff's shoulder and back pain each constituted "moderate" impairments. (AR at p. 374). She again opined that Plaintiff remained capable of "light" work. (AR at p. 375).

In July 2014, ARNP Caleb Ledford indicated Plaintiff's shoulder pain and back pain continued to be "moderate" impairments. (AR at p. 405). Like ARNP Bariletti, Ledford opined Plaintiff remained capable of "light" work. (AR at p. 406).

---

[2] For claims filed on or after March 27, 2017, nurse practitioners and physician assistants are now considered "acceptable medical sources." 82 Fed. Reg. 5844 (Jan. 18, 2017).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

In August 2016, ARNP Joseph Poston indicated Plaintiff's left shoulder joint impairment and degenerative disc disease (DDD) of the lumbar spine were "marked" in their severity in that they resulted in a "very" significant interference with the ability to perform one or more basic work-related activities. (AR at p. 462). He opined that Plaintiff was limited to "sedentary" work, that being the ability to lift 10 pounds maximum and frequently lift or carry lightweight articles, and the ability to walk or stand for only brief periods.[3] (AR at p. 463).

The ALJ accorded "little weight" to the ARNP assessments because "[t]hey are not acceptable medical sources for providing such assessments and their assessments appeared to be based solely on the claimant's subjective allegations with no history of observation or treatment over time." (AR at p. 25). As noted above, while nurse practitioners are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment, their opinions are relevant to show the severity of an impairment and how it affects a claimant's ability to work. The ALJ must offer a germane reason for discounting such opinions.

Prior to completing the DSHS evaluation in August 2016, the record shows ARNP Poston saw the Plaintiff on at least five occasions. On August 24, 2015, Plaintiff was seen for left shoulder pain that had begun seven years ago. (AR at p. 545). Poston noted that Plaintiff had not tried physical therapy or seen a specialist. (*Id.*). Poston referred the Plaintiff for an MRI of his shoulder and for an orthopedic evaluation. (AR at pp. 548-49). Poston saw Plaintiff again on August 31, 2015 for left shoulder pain. Poston noted that Plaintiff was provided with paperwork to schedule an MRI and that he was to follow-up with orthopedics as had been discussed. (AR at p. 543). Poston saw Plaintiff on December 10, 2015 for a right

---

[3] The social security regulations contain similar definitions of "sedentary work." 20 C.F.R. §404.1567(a) and §416.967(a).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

hand injury. (AR at p. 536). Poston also saw the Plaintiff on July 12, 2016, and again on July 26, 2016, for anxiety and depression, (AR at p. 518 and p. 525), before seeing him on August 2, 2016, for the DSHS evaluation and complaints of shoulder and back pain. In his August 2, 2016 report, Poston noted the onset of Plaintiff's shoulder pain was eight years ago, while the onset of his back pain was 18 years ago. (AR at p. 513). A referral was placed for an MRI of Plaintiff's lumbar spine. (AR at p. 516). In the DSHS evaluation form, Poston noted that Plaintiff needed an orthopedic evaluation and treatment, and likely needed physical therapy. (AR at p. 463).

Clearly, prior to completion of the August 2016 DSHS evaluation form, there was some observation and treatment by Poston of Plaintiff's shoulder and back pain. And the ALJ could not dismiss Poston's opinion about Plaintiff's exertional capacity simply because Poston was a nurse practitioner. Nevertheless, the ALJ's error is harmless in light of the other substantial evidence in the record which supports his finding regarding Plaintiff's physical RFC. Factual errors are harmless where the court can conclude from the record that the ALJ would have reached the same result absent the error. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Legal errors are harmless where it is clear they did not alter the ALJ's decision. *Id*. The record is viewed as a whole to determine whether the error alters the outcome of the case. *Id*.

Here, two other nurse practitioners who had seen the Plaintiff for shoulder and back pain, albeit apparently only in conjunction with the DSHS evaluations prepared by them (AR at pp. 376-80; 407-411), opined that Plaintiff maintained the exertional capacity for "light" work. William Drenguis, M.D., who performed a consultative examination of the Plaintiff in November 2014, shared that opinion. Plaintiff described for Dr. Drenguis being able to stand and walk for one to two hours and sit for 60 to 90 minutes before needing to change positions; that he was comfortable lifting up to 50 pounds, but was more comfortable with 20 pounds; that he was able

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

to do all of his grocery shopping, including getting items off the top shelves, and that he could do all the household chores, but only one hour at a time due to lumbar discomfort. (AR at p. 447). Based on his examination of Plaintiff, Dr. Drenguis concluded Plaintiff's maximum standing and walking capacity with normal breaks was at least six hours; that his maximum sitting capacity with normal breaks was at least six hours; that his maximum lifting and carrying capacity was 50 pounds occasionally and 25 pounds frequently; that he could frequently climb, balance, stoop, kneel, and occasionally crouch and crawl; and that with his left upper extremity, he could occasionally reach, but otherwise had no limits on handling, fingering, or feeling. (AR at pp. 448-50).

The ALJ noted that as of July 2017, the date of Plaintiff's last visit to the Tri-Cities Community Health Center, Plaintiff had still not followed up on getting an MRI of his left shoulder. (AR at p. 23), Nor is it apparent from the record that Plaintiff obtained an MRI of his lumbar spine or an orthopedic evaluation pursuant to the referrals by ARNP Poston. The unexplained failure to pursue follow-up evaluations supports the ALJ's conclusion that Plaintiff's exertional capacity is not as severely diminished as opined by ARNP Poston.

The ALJ observed that the record shows Plaintiff mows grass and puts out garbage for others. (AR at p. 20). On September 27, 2016, Plaintiff told his psychotherapist he played disc golf all day the previous Saturday and moved the boxes in his garage (AR at p. 660); on October 7, 2016, he advised that he walks the dog and waters the yard and that he went fishing for three hours (AR at p. 558); and on November 8, 2016, he told his therapist he was mowing two lawns a week and fishing to put steelhead on the table (AR at p. 649). These activities are consistent with the activities reported by Plaintiff to Dr. Drenguis and are consistent with an exertional capacity for "light" work as found by the ALJ.

"Substantial" evidence in the record, including the opinions of the State agency

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

medical consultants as discussed by the ALJ in his decision (AR at p. 24), supports the ALJ's physical RFC determination.

### B.  Mental Impairments

Tae-Im Moon, Ph.D., completed a DSHS "Psychological/Psychiatric Evaluation" form on Plaintiff's behalf in September 2013.  Dr. Moon asked Plaintiff about any mental disorder that interfered with his ability to work and he said he was diagnosed with Attention Deficit Disorder (ADD) as a child, but could not say how symptoms of ADD impacted his job performance.  (AR at p. 394).  Dr. Moon diagnosed the Plaintiff with Bipolar Disorder NOS (not otherwise specified), Attention Deficit Hyperactivity Disorder (ADHD), Anxiety Disorder NOS, and Learning Disorder NOS.  (AR at p. 395).  She opined that Plaintiff had a "marked" (very significant) limitation in abilities to understand, remember, and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; maintain appropriate behavior in a work setting; and set realistic goals and plan independently.  (AR at p. 396).

The ALJ gave "little weight" to this assessment because the diagnosis of bipolar disorder had since been found to be unsupported and because Plaintiff's history of ADHD did not continue to support any significant limitations.  (AR at p. 26).  The ALJ also found the evaluation form was "exceptionally limited for any supporting information."  (*Id.*).

In December 2014, Plaintiff underwent a consultative psychiatric examination by Greg D. Sawyer, M.D., Ph.D..  Among the records reviewed by Dr. Sawyer was Dr. Moon's evaluation.  (AR at p. 453).  As with Dr. Moon, Plaintiff advised Dr. Sawyer that the primary reason he could not work was because of his left shoulder

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

pain. (AR at pp. 394 and 454). Plaintiff was not taking any medications at that time. (AR at p. 454). Based on the mental status examination, in conjunction with the activities of daily living reported by the Plaintiff, Dr. Sawyer diagnosed the Plaintiff with "[m]ajor depressive episode, moderate, recurrent, without psychotic features." (AR at p. 458). According to the doctor, the Plaintiff "could potentially find some benefit by seeking mental health treatment and complying with the treatment and medications." (*Id.*). Dr. Sawyer opined Defendant would have difficulty in performing detailed and complex tasks and might continue to have difficulty in accepting instructions from supervisors because he historically had some difficulty in that regard. Dr. Sawyer opined that otherwise, Plaintiff would not have any difficulty in terms of work-related functioning. (AR at pp. 458-59). The ALJ accorded "great weight" to Dr. Sawyer's assessment. (AR at pp. 25-26).

In August 2016, Erin Darlington, Ph.D., completed a DSHS "Psychological/Psychiatric Evaluation" form on Plaintiff's behalf. Dr. Darlington reviewed the evaluation completed by Dr. Moon in September 2013. (AR at p. 469). The Beck Depression Inventory-2 (BDI-2) was administered to Plaintiff, but he was unable to complete it "due to feeling so angry because 'you should already know all this.'" (AR at pp. 470-71). The Beck Anxiety Inventory (BAI) was administered to Plaintiff, but about halfway through, he marked "severe" on all of the remaining inventory questions without reading them, rendering the assessment score invalid. (AR at p. 471). Dr. Darlington noted Plaintiff was irritable and hostile towards her throughout her interview of him; that he was defiant and defensive; and on the mental status examination (MSE), he began drawing shapes before she finished stating the instructions, and therefore, he incorrectly followed the directions. (*Id.*). Notwithstanding the foregoing, Dr. Darlington diagnosed Plaintiff with Persistent Depressive Disorder, Unspecified Anxiety Disorder, Unspecified Other Substance-Related Disorder, Unspecified ADHD (by history), Specific Learning Disorder, with

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

impairment in reading (by history), Unspecified Disruptive, Impulse-Control, and Conduct Disorder, and Other Specified Personality Disorder (mixed personality features). (AR at p. 472). And Dr. Darlington opined that Plaintiff had "marked" (very significant) limitations in his abilities to understand, remember, and persist in tasks by following very short and simple instructions; learn new tasks; perform routine tasks without special supervision; make simple work-related decisions; ask simple questions or request assistance; and set realistic goals and plan independently. (AR at pp. 472-73). Furthermore, she opined that Plaintiff would simply be unable in a competitive employment situation to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; adapt to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. (AR at pp. 472-73). Dr. Darlington opined that Plaintiff would benefit from intensive behavioral treatment, anger management training, and continued substance abuse treatment. (AR at p. 473).

The ALJ gave "little weight" to Dr. Darlington's assessments because she "clearly stated that the claimant was defiant and hostile, and had provided written responses in testing that were not reliable due to observations of his responding in the extreme to question without reading them." (AR at p. 26). This was a specific and legitimate reason to discount Dr. Darlington's opinions and as discussed *infra*, the record bears out that Plaintiff subsequently benefitted from behavioral treatment as opined by Dr. Darlington and Dr. Sawyer.

Per Dr. Darlington's recommendation, Plaintiff commenced mental health treatment with Tri-Cities Community Health, Behavioral Health Services Department,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

in July 2016. On September 27, 2016, Plaintiff informed his therapist, Kristine Ames, Licensed Social Worker (LCSW), that he had contacted a potential employer and had played disc golf all day the previous Saturday instead of sitting around the house. (AR at p. 660). At the Plaintiff's request, therapist Ames requested a psychiatric referral. The therapist agreed with Plaintiff that ADHD medication and other medication might assist him in his functioning. (AR at p. 661). On October 7, 2016, Plaintiff informed the therapist that he did not want the job he applied for "because it only paid $13.50/hour and he wants $15.[00/]hour with no recent work history." (AR at p. 658). According to the therapist's notes from that visit, Plaintiff "stated that he can't work and went fishing for 3 hours even though his shoulder, back and neck hurt" and he "stated he walks the dog and waters the [yard]." (*Id.*). On November 8, 2016, Plaintiff reported that he mowed two lawns a week and fished for steelhead to "put on the table." (AR at p. 649). He stated he thought he could work at the deli counter at a grocery store and was thinking of applying. (*Id.*).

On December 14, 2016, Plaintiff underwent a "Psychiatric Diagnostic Evaluation" by Rinah Gutierrez, M.D., at Tri-Cities Community Health. Plaintiff reported he was not taking any psychiatric medication, although he had previously been prescribed anti-depressant medication and medication for anxiety. (AR at p. 584). Plaintiff felt Buspirone (Buspar) decreased his anxiety when he took it, but found no benefit with Citalopram (anti-depressant). The doctor prescribed Seroquel "[f]or improvement of moods, disorganized thinking." (AR at p. 588).

On February 14, 2017, Plaintiff informed therapist Ames that he filled the prescription for his psychiatric medication, but never took it because "Seroquel is too strong a medicine and waiting 4-6 weeks for an anti-depressant to work is ridiculous." (AR at p. 635).

On May 17, 2017, Plaintiff had a "Medication Management" appointment with Dr. Gutierrez. Plaintiff advised that as a child, he was diagnosed with ADHD, but it

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

was unclear if ADHD medication helped him because he did not take it regularly. (AR at p. 604). Plaintiff indicated he took prescription Buspar as needed and he thought it helped his anxiety when he took it. (*Id.*). He stopped taking Seroquel after five days due to dry mouth, constipation and worsening of hemorrhoids. (*Id.*).

On July 31, 2017, Plaintiff reported to therapist Ames that he was taking his mood stabilizer and anti-anxiety medication, was feeling much better, and realized he was the cause of most of the agitation in his life. (AR at p. 620).

On September 18, 2017, Plaintiff reported to Dr. Gutierrez that he experienced irritability "more so" before he takes his morning and afternoon medication; he did not have outbursts as he had in the past; he was remorseful about his past; he had no suicidal thoughts; and reported a decline in anxiety attacks since he started taking Buspar. (AR at p. 589).

On September 19, 2017, Plaintiff advised therapist Ames that Dr. Guteirrez had increased his Adderall for his ADHD (first prescribed on August 31), and had also increased his "nightmare" medication upon his request, although Plaintiff acknowledged he was inconsistent in taking his medications. (AR at p. 608).

On September 5, 2017, therapist Ames completed a "Mental Residual Functional Capacity Assessment" form prepared by Plaintiff's counsel. Ames indicated that Plaintiff was "markedly" and "severely" limited in his mental abilities to perform numerous basic work-related activities. (AR at pp. 562-63). "Markedly Limited" is defined as a very significant interference, in other words, unable to perform the described mental activity for more than 33% of the workday. "Severely Limited" is defined as inability to perform the mental activity. (AR at p. 562). With regard to the Paragraph "B" Criteria applicable to Mental Disorders in the Listing of Impairments (20 C.F.R. §404, Subpart P, App. 1, 12.00), Ames indicated Plaintiff had "marked" limitations in his abilities to understand, remember, or apply information, and to adapt or manage oneself, and "extreme" limitations in his abilities to interact

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

with others, and to concentrate, persist, or maintain pace. (AR at p. 564). A "marked" limitation means functioning independently, appropriately, effectively, and on a sustained basis is seriously limited. An "extreme" limitation means the individual is unable to function independently, appropriately, effectively, and on a sustained basis. (*Id.*). With regard to the Paragraph "C" Criteria, therapist Ames indicated Plaintiff had "a residual disease process that has resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (*Id.*). Ames further indicated that Plaintiff would likely be off-task over 30% of the time during a 40-hour week and would miss four or more work days per month. (AR at p. 565).

The ALJ accorded "little weight" to Ames' assessment "because of its obvious extremeness" and there being "no evidence that would support the level of absenteeism indicated . . . or that he had only marginal adjustment to any increased demands." (AR at p. 26).

The ALJ offered germane reasons, supported by substantial evidence in the record, to discount therapist Ames' opinions. None of the psychologists or psychiatrists who evaluated or treated the Plaintiff opined he was as limited as opined by Ames, with perhaps the exception of Dr. Darlington whose opinions were appropriately discounted because of Plaintiff's failure to cooperate during her evaluation. Significantly, treating psychiatrist Dr. Gutierrez did not offer an opinion regarding the extent of Plaintiff's mental limitations. In the "Mental Residual Functional Capacity Assessment" form she completed, therapist Ames acknowledged that Plaintiff was treated by a treatment team, that her opinions were not the opinions of the treatment team, and that at least one M.D. (Gutierrez) was on the treatment team. (AR at p. 565). In the "Comments" section of the form, Ames wrote that Plaintiff "has ADHD which limits his ability to concentrate" and "also limits his

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

ability to cooperate with others." (*Id.*).  As noted above, the record indicates Plaintiff historically had not taken his ADHD medication and when prescribed for him most recently by Dr. Gutierrez, he continued to be inconsistent in taking his medications, even though the record indicates he was being helped by at least some of them.  Dr. Moon's September 2013 evaluation took place three years before Plaintiff commenced a regular course of mental health treatment.  This was a specific and legitimate reason for the ALJ to give it "little weight."[4]   The ALJ was justified in according "great weight" to the opinions of Dr. Sawyer because, as discussed above, the Plaintiff did indeed, as stated by the doctor, "find some benefit by seeking mental health treatment and complying with the treatment and medications."

"Substantial" evidence in the record supports the ALJ's mental RFC determination.

## LISTING OF IMPAIRMENTS

Plaintiff contends the ALJ erred in failing to conduct an adequate analysis at step three  and failing to find Plaintiff met or equaled, singularly or in combination, Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), 12.08 (Personality and impulse-control disorders), 12.11 (Neurodevelopmental disorders), and 12.15 (Trauma and stressor-related disorders).  Plaintiff asserts the "improperly rejected opinions of Dr. Darlington, Dr. Lewis, Dr. Moon and Ms. Ames, as well as . . . his history of 28 criminal arrests/charges and treatment notes consistently documenting severe symptomology

---

[4] The ALJ stated that Dr. Moon's September 2013 bipolar disorder diagnosis had "since been found to be unsupported," but Dr. Gutierrez made that diagnosis in September 2017 (AR at p. 590).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 17**

1  (sic)" evidence that Plaintiff meets or equals one or more of the aforementioned

2  Listings.

3  As discussed *supra*, the ALJ offered adequate reasons supported by substantial

4  evidence to discount the opinions of Drs. Darlington and Moon, and the opinion of

5  therapist Ames.[5]   The ALJ thoroughly analyzed the Paragraph "B" Criteria in

6  concluding Plaintiff has a mild limitation in understanding, remembering or applying

7  information; a moderate limitation in interacting with others ("he is able to interact

8  with others as evidenced by his care of his children, relationship with his girlfriend,

9  and reports of making amends with neighbor(s) with continued demonstrations of

10  mowing grass and putting out garbage for others"); a moderate limitation with regard

11  to concentrating, persisting, or maintaining pace; and a mild limitation in terms of

12  adapting and managing oneself ("he has remained independent in all his activities of

13  daily living including maintaining his hygiene, making plans independently, and

14  taking appropriate actions to manage his psychologically based symptoms, i.e., finally

15  pursuing treatment").  (AR at p. 20).  The ALJ's conclusions are supported by

16  substantial evidence in the record, as is his conclusion that the evidence failed to

17  establish the presence of the Paragraph "C" Criteria because Plaintiff "has more than

18  just a minimal capacity to adapt to changes in his environment or to demands not

19  already part of [his] daily life, and this is supported by his ability to remain

20

21  _____

22  [5] Janis Lewis, Ph.D., completed a "Review of Medical Evidence" form for

23  DSHS on August 25, 2016.  (AR at p. 476).  She reviewed the reports of Drs.

24  Darlington and Moore, and she concluded the severity and functional limitations

25  of the mental conditions diagnosed by them were supported by the available

26

27  medical evidence.  (*Id.*).

28  **ORDER GRANTING DEFENDANT'S**
   **MOTION FOR SUMMARY JUDGMENT- 18**

independent in his daily functioning and his pursuit of mental health treatment, which included medication and counseling, with reports of improvement." (AR at pp. 20-21).

The ALJ conducted an adequate analysis at step three and did not err in concluding Plaintiff does not suffer from a mental condition or a combination of mental conditions that meets or equals one or more of the Listings of Impairments.

## TESTIMONY RE SYMPTOMS AND LIMITATIONS

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014)*; Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*.

Plaintiff contends the ALJ offered "little more than vague assertions that [Plaintiff's] allegations are unsupported by the overall medical evidence . . . ." As discussed above, the ALJ provided adequate reasons for discounting medical opinions about Plaintiff's physical and mental limitations that exceeded the RFC determined by the ALJ.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 19**

As the ALJ noted in his decision, there is no evidence Plaintiff required or pursued any significant treatment for his shoulder and back impairments, and more specifically, no evidence Plaintiff required or sought any treatment for his shoulder complaints until 2017. (AR at p. 22). When he received steroid injections in his neck in September 2017, he reported that it helped his shoulder pain a lot. (AR at p. 23 and pp. 611-13). "Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a factor to be considered in weighing a claimant's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

As discussed previously, the ALJ pointed out that Plaintiff was inconsistent in taking medication prescribed for his mental health and showed improvement when he consistently took said medication. There is no evidence Plaintiff's inconsistency was due to anything but his own personal preference. *Molina*, 674 F.3d at 1114.

Plaintiff's daily activities - disc golf, fishing, mowing lawns, etc.- legitimately call into question the severity of Plaintiff's physical and mental symptoms. And there are also the Plaintiff's statements, cited by the ALJ (AR at p. 24), which indicate he was not working for reasons unrelated to his physical and mental impairments. These statements are not ambiguous and legitimately call into question the severity of Plaintiff's physical and mental symptoms. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). In light of all the medical evidence, it was reasonable for the ALJ to conclude these statements were not attributable to Plaintiff's mental impairments and specifically, a personality disorder.

The ALJ did not reject subjective testimony solely because it was not fully supported by objective evidence. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). The ALJ provided clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony regarding the severity of his symptoms and the extent of his limitations.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 20**

# CONCLUSION

"Substantial evidence" in the record supports the ALJ's RFC determination that Plaintiff can perform "light" work, subject to the non-exertional limitations found by the ALJ. At the hearing, the VE opined that an individual with that RFC would be capable of performing jobs existing in significant numbers in the national economy. (AR at pp. 27-28; 70-73).

The evidence of record is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff is not disabled. The evidence does not compel a contrary determination.

Defendant's Motion For Summary Judgment (ECF No. 18) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 13) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this ___17th___ day of March, 2020.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge


**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 21**